Judge Rowan
delivered the opinion of the court.
An execution for about the sum of l86 10s. with interest and costs, in the name of M’Coun and Tilford, against Alexander Sproule, was levied upon a negro woman Jane, and Maria her child, the property of the said Alexander. The negroes were sold by the sheriff in June, 1806, by virtue and in discharge of the said execution. They were purchased at the sale by Edward Flowers, at his bid of 122 l.
The bill alledges that the said Alexander, at the time of the sale aforesaid, was incompetent to manage his own business: That his wife Jane and son William were appointed, by him, to attend to this matter; to raise money and redeem the negroes aforesaid: That they entered into an agreement with the said Edward Flowers, whereby he was to advance the amount of the execution aforesaid, and release the said negroes therefrom, for the benefit of the said Alexander: That, by the said agreement, he was to have and retain the said negroes as a pledge for the re-payment of the money to be advanced by him: That the repayment might be made at any time. He was, moreover, to receive a premium for his services; which premium is alledged to have been paid. It is also alledged that the money advanced by the said Edward, with interest thereon, was tendered to him by the said Alexander, and the negroes demanded pursuant to the agreement aforesaid; but that he refused to receive the money and restore the negroes, and that he, during his life, and his representatives since his death, have retained, and do still retain, the said negroes; during which time the said Jane has borne five other children, which are all living. It is alledged in addition, that the money advanced by Flowers was a loan on high interest, that the negroes were pledged therefor, and not sold.
The appellants, in their answer, deny that their testator *55 advanced the money upon the terms or under the agreement alledged in the bill, or that the money, was advanced for the said Sproule under any agreement or upon any terms, whatever. They insist that he purchased the said negroes at the sheriff’s sale, made under and by virtue of the execution aforesaid, for himself, and not for the said Sproule. They state that they are induced to believe that their testator, after he had purchased the said slaves at the sheriff’s sale aforesaid, and on the day of the sale, promised Jane, the wife of said Alexander, that if she would, within three months thereafter, pay to him the amount given by him for the said slaves, with interest thereon, she should have them: But they deny that the money was paid or tendered to him within the three months. They admit the possession and retention of the negroes by their testator during his life, and by them since his death—they admit that there are now seven slaves in all, the negro woman having borne five children since the purchase of her by their testator. They exhibit and insist upon a schedule, of his property, delivered in by the said Alexander Sproule as an insolvent debtor in the year 1812, pursuant to the statute in that case provided, in which schedule no notice is taken of the aforesaid negroes, nor is any claim or title to them asserted by the said Alexander. They insist, moreover, upon the lapse of time as a bar to the claim of the appellees.
The court below decreed that the appellants should surrender to the appellees the aforesaid seven negroes, upon being paid by them l112, with interest thereon from the 11th day of June, 1806, or upon failure to deliver the negroes, that they should pay $3,000, the ascertained value of the said slaves, with interest thereon from the 11th day of June, 1818, till paid, subject to a deduction of the aforesaid l112, with interest thereon as aforesaid, the correctness of which decree is questioned by the appeal to this court.
The points made by the appellants’ counsel, in their assignment of errors, are—1. That a court of chancery had not jurisdiction; that the remedy, if it existed in the case, was plain at law: 2d, That the court erred, in decreeing a redemption of the slaves; and, 3d, That the decree is erroneous in its details.
If the negro woman and her child could, in this case, be considered as pledged by Sproule to Flowers for the l112, advanced by him to the sheriff; there would be no doubt *56 that Sproule, by the payment of the money, or the tender of it to Flowers, would, upon his receipt thereof, or refusal to receive it, have been entitled to the negroes, and might have maintained his action of trover, or of detinue, had Flowers refused to surrender them. In either of which actions, and particularly in the last, his remedy would have been ample, as much so as any which a court of chancery could afford. But, can those negroes be considered as pledged according to any just notion of a pledge or pawn? A pawn or pledge is an article of personal property delivered to another, or left with him by the owner thereof, as security for the payment of a sum of money borrowed from, or due to, that other person. Were those negroes delivered to, or left with, Flowers by Sproule, as a pledge for money due, or advanced by, the latter to the former? They were sold by the sheriff and bought by Flowers at the sale: The delivery by the sheriff to Flowers was necessarily unqualified and absolute, and of that character, consequently, was his possession of the slaves. But it may be contended that Flowers, by agreement with Sproule, through the agency of his wife and son, bought the slaves for the latter—that the money which he advanced, should be considered as having been virtually loaned by him to Sproule, and he considered as the bidder and purchaser for the use and benefit of Sproule, with the right to retain the slaves until the money with interest, should be refunded; and, in this view of the case, the contract be considered as in the nature of a mortgage, and Flowers as a quasi-mortgagee.
If a slave be pledged or pawn’d for the securing money advanced by the pawnee, on payment or tender and refusal the remedy to recover is at law.
A bidder at a sheriff’s sale, and for the use or in behalf of the defendant in execution, is a fraud on the law and is not to he countenanced.
It may be observed, first, that the case is not made out in proof. It is satisfactorily proved, that Flowers acknowledged that he had agreed, if his money were paid him within three months, he would deliver up the negroes, but whether that agreement was made before his purchase, or (according to the admissions in the answers) afterwards, does not appear. Taken as made before the purchase, we should doubt its validity Good faith and public policy require that the ostensible shall be the real owners of personal property; for possession is the general, and in most cases, the only indicium of ownership, in that kind of property. Flowers, by his public purchase and subsequent visible possession of those slaves, would be reputed the real owner, and would obtain credit with the public to the extent of their value; but after nine years, if this agreement be valid, (during all which time they have been withdrawn *57 from the creditors of Sproule,) they may be withdrawn by Sproule, from the creditors of Flowers. Good policy dictates, and the law accords with policy in requiring, that when the title is, by contract, separated from the possession of property, and particularly of personal property and slaves, the public shall be notified of it by an enrolment of the contract. But is it not moreover contrary to good faith, and a fraud upon the public, (who are brought together and act at a public sale in the confidence that the property to be disposed of shall go to the highest REAL bidder,) that an ostensibly REAL shall be an UN-REAL bidder. That the owner shall, by a secret agreement between him and a third person, use that third person in a false character, viz. as a real bidder, and thereby raise the price of the property upon real bidders, perhaps much beyond its real value. If this course were sanctioned, might it not restrain persons from attending the public sales ordained by the law for the effectuation of its judgments, under the impression that it would be useless to attend the sales and bid for the property; that it was to be struck off to a procured bidder, and that all competing bids would be unavailing? And would not the result be, that owing to a failure of bidders the owner could have the property stricken off, ostensibly to his bidder, but really to himself, at a sum greatly below its value, in fraud of his creditor and in contempt of the law, the process and energies of which had been thus tricked and defeated—taken as made after the purchase. It is then a conditional promise gratuitously made, and could not be enforced, first, because the condition had not been complied with; and secondly, because there was no valuable consideration for making the promise—so that in either of the views of this agreement as taken above, it ought not to be enforced by judgment at law or decree in chancery—as a contract in the nature of a mortgage there is still less reason to consider it. If it were not as a contract intrinsically vicious, for the reasons above stated, it could, at most, amount to a conditional sale of the negroes to Flowers, which, by the failure of the condition, became absolute. The distinction between a conditional sale and a mortgage exists as clearly in law as it exists in fact; and care should be taken by the judge not to confound them, particularly in relation to slaves.
See Cowp's. Rep. 396.
A purchaser at a sheriff’s sale promising to return the property to the debtor, if the money given thereafter is repaid by a day certain, cannot be obliged to do so if the money is not punctually paid; such promise is also a nude pact.
Whether a mortgage or conditional sale, wherever the question occurs, should be determined by reference to the *58 intention of the parties, and that intention should be ascertained as well from the subject matter of the contract, the conduct of the parties in relation thereto, and from other extraneous circumstances, as from the face and import of the writing. In the present case there is no writing. The contract is alledged to have existed in parol: The absence of writing excludes the idea of its being a mortgage. But we are enquiring whether it can be considered a contract in the nature of a mortgage, or a conditional sale and, looking into the transaction and conduct of the parties to ascertain their intention. If a mortgage had been contemplated, why did not Flowers advance the amount of the execution, (which was less than the sum for which the negroes sold) release the negroes therefrom, and take a mortgage upon them for the repayment of his money, and interest? That, in addition to its being a fair, was a natural, easy, and simple mode of acting in the case, and would, no doubt, have been practised had the parties contemplated a mortgage. The absolute sale by the sheriff, and not less absolute purchase by Flowers, connected with the oath of insolvency and the schedule therewith delivered by Sproule near six years after the sale, exclude every idea of its being a mortgage, or a contract in the nature of a mortgage, and leave it (if a contract at all) a contract of conditional sale. In contracts of conditional sale, as in those of absolute, the law leaves the parties where they placed themselves; while it aims to enforce, it disclaims the power of varying men’s contracts. It may not be improper to remark, that we feel a strong disinclination to convert, by construction, conditional sales of slaves into mortgages. When a contract of this sort is construed to be a mortgage, it follows that a redemption, and that perhaps after a great lapse of time, must be permitted, which, from the nature of the property, must often be attended with injurious and afflicting consequences; Injurious—as it relates to the fortune and prospects of the constructive mortgagee and his family. Afflicting—as slaves, though property, are intelligent and sympathetic beings—they interchange sentiments, mingle sympathies; and reciprocate with their possessor and the members of his family, all the social regards and kind attentions which endear the members of the human family to each other, and bind them in the social state. The agonies of feeling, as well on the part of the slaves as of their possessors, inseparable from a sudden disruption of those social relations, *59 ought not to be lightly regarded by the judge, who, after the lapse of many years from its date, is called upon to decide whether a contract for slaves be a contract of mortgage or conditional sale. In no view which we have been able to take of this case are we able to sustain the decree. It must therefore be reversed with costs, the cause remanded to the court below, with directions to that court to dismiss the bill of the appellees with costs.
The distinction between a mortgage and conditional sale is well known to the law, & to ascertain to whichclass a contract belongs, should be ascertained by the intention of the parties and other extraneous circumstances.
Bibb and Hardin for appellant, Talbot for appellee.